## JAMES CRANSTON v. ROBERT T. SMITH.

A bill in equity is not demurrable, because, in stating a trust charged upon lands or an agreement which comes within the scope of the statute of frauds, it does not disclose whether the trust or agreement is provable by proper written evidence or not; the proper course being to take such objection by plea or answer.

DEMURRER to a bill in equity. The bill stated that the complainant — deformed and crippled in body from his birth, and incapable of earning his own livelihood — was the illegitimate son of Ebenezer Smith, late of Barrington, deceased, father of the defendant, and during the life of said Ebenezer, always lived with him, and was acknowledged by him and his family, including the defendant, as such illegitimate son; that on or about the 15th day of January, 1854, the said Ebenezer Smith died, intestate, seised and possessed in his own right in fee simple, of certain real estate, viz.: a farm situated in Barrington, being the farm upon which the said Ebenezer formerly

Cranston *v.* Smith.

resided and upon which the defendant now resides, and leaving a widow and six legitimate children, one of whom is the defendant, and an illegitimate son, the complainant; that upon the death of said Ebenezer the defendant entered into possession of said farm, and that the complainant, for about three years thereafter boarded with the defendant thereon, at the expiration of which time, to wit, on the 3d day of January, 1857, the heirs at law of said Ebenezer agreed among themselves upon a division of said real estate, and divided the same as follows, viz.: the whole of said farm was valued, by agreement, at the sum of eight thousand dollars; and after settling with the widow for her right of dower therein, the balance was divided into seven shares, and one of said shares set off to each of said six heirs who allowed and set apart the other remaining share, amounting to one thousand dollars, to the complainant; and said other five heirs then conveyed their entire interest in the whole of said farm to the defendant, he paying them therefor one thousand dollars less than the agreed value of their combined interests therein, and they leaving and placing in his hands the other one thousand dollars, the share allowed and set apart for the complainant, or, rather, they conveying to the defendant, in fee simple, an interest and share in said farm, equal in value to one thousand dollars, without any payment by him therefor, but the defendant, in consideration thereof, then and there agreeing to support and maintain the complainant in a comfortable manner, furnishing him with good and proper food, shelter, and clothing, and taking good care of him during his natural life; and that, accordingly, the complainant, from that time down to the time when, on the 17th day of April, 1858, as hereinafter stated, he was compelled to leave the defendant, remained with him upon said farm; that ever since the division of their said father's estate as aforesaid, the defendant has treated the complainant in a most cruel and inhuman manner, — many times allowing him only refuse food, unfit for any human being, — not providing him with sufficient clothing, nor, in cold weather, with sufficient fire to protect him from the weather and to keep him comfortably warm, and, even in severe winter weather, compelling him to occupy and sleep in an outbuilding,

without fire, and with no other bed than a straw bed, and an old comforter to cover him, and frequently using violence and cruelly beating the complainant without provocation or cause; that the complainant bore such treatment as long as he was able, and longer than he would or could have borne the same, had it not been for his utterly helpless and dependent condition, well hoping that the remonstrances of friends and neighbors who, through pity, interested themselves in his behalf, would induce the defendant to mitigate his treatment and ameliorate his condition; but that, finding all remonstrances in vain, the complainant, in self-defence and for self-preservation, was at length compelled, in order to escape such inhuman treatment, to run away from the defendant, which he did, on the 17th day of April, 1858, and has since resided, and now resides, with the overseer of the poor of the town of Barrington.

The bill then goes on to pray that the defendant may answer the premises, " and that the defendant may be compelled, by decree of this court, comfortably and properly to support, maintain, and clothe your orator during his natural life, and that the said defendant may be decreed to be the trustee of your orator for said sum of one thousand dollars and interest thereon from said second day of March, 1857, the date of said settlement, — and may be decreed to pay over the same to your orator, or to such proper person as your honors may appoint, to receive and hold the same as trustee for your orator, and that the same, until paid, may be decreed to be a lien in favor of your orator upon the real and personal estate of the respondent, and that in default of such payment by the respondent, such his estate, or so much thereof as may be necessary, may be sold to pay the same, and that in the mean time said respondent may be enjoined from selling, conveying, or incumbering such his estate," and for further relief. To this bill, which was originally filed in the county of Bristol, and removed, by agreement, to the county of Providence, the defendant filed a demurrer for want of jurisdiction and want of equity.

The case was submitted, without argument, by *James Tillinghast*, for the complainant, and *Payne & R. W. Greene*, for the defendant.

20 *

AMES, C. J.　The bill states a gross breach of trust committed by the defendant to the injury of one whose helpless condition strongly appeals for him to the protection of the court; and as it has been submitted to us, upon demurrer, without argument, we are at a loss to conceive upon what ground the demurrer has been filed.　If, indeed, as is substantially alleged, the defendant has received from the brothers and sisters of the deformed and crippled complainant a conveyance of real estate charged with the duty of comfortably supporting him, a court of equity would be quite regardless of its jurisdiction and of the obligations which it imposes, if it did not endeavor to remedy a fraudulent evasion of such a duty.

The only supposable ground of this demurrer is, that, as it does not appear on the face of the bill whether the trust or agreement of the defendant is in writing or not, the bill is deemed, on that account, to state a case within the inhibition of the statute of frauds.　This statute, however, has always been held, at law, to have introduced a new rule of evidence merely, and not to have altered or affected the manner of pleading; 1 Saund. 9 a. (n. 1), 276, (n. 1) ; and we do not see, upon principle, how any different construction can be put upon it in a court of equity.　Upon this ground, it was decided in *Cozine* v. *Graham*, 2 Paige Ch. R. 177, that where it did not appear upon the face of the bill, whether an agreement, within the scope of. the statute of frauds, was in writing or not, if it was a good agreement by parol at the common law, it could not be objected upon demurrer, that it was not stated in the bill to be in writing; the agreement, if in writing, being, in this manner, well stated in the bill.　Although some dicta may be found in the books, as noticed by Chancellor. Walworth, in *Cozine* v. *Graham*, supra, which appear to warrant a demurrer in such a case, the practice has always been otherwise, and the objection has always been taken by plea or answer, as, upon principle, it ought to be.

It is unnecessary for us, therefore, for the purpose of disposing of this demurrer to consider whether we have any enactment upon our statute book tantamount to the 7th section of the statute of 29 Chas. 2, ch. 3, avoiding parol trusts of lands ; and,

if we have, whether this bill states facts which enable the court, notwithstanding, to give relief, in order to prevent fraud.

For the reason above given, we are not satisfied that no discovery or proof, called for by the bill, or founded upon its allegations, can make the cause set forth in it a proper subject of equitable cognizance, and must, therefore, overrule this demurrer to it, with costs.